**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| JOSHUA JOHN PANGELINAN, a.k.a. JOSHUA J.P. TEDTAOTAO, | CIVIL CASE NO. 24-00014 |
| Plaintiff, | **DECISION AND ORDER GRANTING PLAINTIFF'S APPLICATION TO WAIVE FEES, DISMISSING IN PART PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND, AND DENYING PLAINTIFF'S MOTIONS TO APPOINT COUNSEL WITHOUT PREJUDICE** |
| vs. | |
| MARK ANDERSON, ALLAN BORJA, FRANK TAIANAO, GABELLE CRUZ, and BOBBY D. LOVE,[1] | |
| Defendants. | |

Before the court is Plaintiff Joshua John Pangelinan's, a.k.a. Joshua J.P. Tedtaotao, Complaint for Violation of Civil Rights (Prisoner Complaint) (the "Complaint"), Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application to Waive Fees"), and Motions to Appoint Counsel. ECF Nos. 1-2, 5, 9. The court has reviewed the record and the relevant law and finds this matter suitable for submission without oral argument.

For the reasons stated herein, the court hereby **GRANTS** Plaintiff's Application to Waive Fees, **DISMISSES IN PART** Plaintiff's Complaint with leave to amend, and **DENIES** his Motions to Appoint Counsel.

---

[1] The court notes that the spellings of certain Defendants' names are inconsistent through the Complaint, such as "Allen" versus "Allan" and "Gabelle" versus "Gaberial." *See* Compl., ECF No. 1.

1    **I.    Procedural Posture**[2]

2         Plaintiff filed the Complaint and Application to Waive Fees on July 8, 2024.[3] ECF Nos.

3    1-2. The Complaint consists of a form complaint for violation of civil rights under 42 U.S.C.

4    § 1983, naming Mark Anderson, Allan Borja, Frank Taianao, Gabelle Cruz, and Bobby D. Love

5    as defendants (collectively, "Defendants"). Compl. at 1, 3-4, ECF No. 1. Plaintiff alleges that the

6    Defendants deprived him of his rights under the First, Sixth, Eighth, and Fourteenth

7    Amendments, as well as Executive Order No. 94-19. *Id.* at 4. Plaintiff's allegations arise out of

8    his incarceration in the Guam Department of Corrections for offenses convicted in the Superior

9    Court of Guam.[4] *See id.* at 4-5. According to Plaintiff, the deprivations began in February 2018

10   and are ongoing. *Id.* at 6. Plaintiff alleges his injury as "[d]isfiguration to my left middle finger

11   knuckle" and requested relief in the form of "[m]oney [d]amages in which the court sees fit." *Id.*

12   at 6. Plaintiff also indicated that he tried to pursue administrative remedies with the prison's

13   "Director's office," but there was no result or response. *Id.* at 8. Additionally, Plaintiff indicated

14   that he has filed other lawsuits in this court, which allege some of the same facts involved here.

15   *Id.* at 10-11. The prior cases, docketed as Civil Case Nos. 21-00016 and 23-00016, were both

16   dismissed.[5] *See id.*

17

18   _____

     [2] The court refers to CM/ECF pagination throughout this Decision and Order.

19
     [3] However, Plaintiff signed the Complaint on May 30, 2024, and the Application to Waive Fees on May 10, 2024.

20
     [4] Plaintiff's local case numbers are CF0006-13, CF0188-13, CF0076-14, and CF0078-14. Relevant here, Plaintiff
21   was admitted on February 14, 2014, and convicted on April 23, 2015. According to the Guam Department of
     Corrections, Plaintiff's projected release date is February 13, 2026.

22   [5] Unlike Civil Case No. 23-00016, which was dismissed with prejudice, Civil Case No. 21-00016 was dismissed
     without indicating whether the dismissal was with or without prejudice. Compare Order, *Pangelinan v. Dep't of
23   Corr.*, Civil Case No. 23-00016 (D. Guam Jan. 2, 2024), *with* Order, *Tedtaotao v. Dep't of Corr.*, Civil Case No. 21-
     00016 (D. Guam Nov. 3, 2022). In fairness to Plaintiff, the court construes its order dismissing Civil Case No. 21-
     00016 as without prejudice. *E.g.*, *Kucherov v. MTC Fin. Inc.*, No. C17-5050BHS, 2017 WL 2345635, at *2 (W.D.
24   Wash. May 30, 2017).

On September 25, 2024, Plaintiff supplemented the factual allegations in his Complaint with a declaration, which explains that he was unable to amend his prior complaints due to the mishandling of his mail by certain defendants.[6] Decl. at 1-5, ECF No. 6.

Additionally, Plaintiff filed his first Motion to Appoint Counsel on August 8, 2024, and a second Motion to Appoint Counsel on October 30, 2024.[7] *See* ECF Nos. 5, 9. The first motion requests an attorney to assist with collecting evidence, such as his medical records, Department of Corrections records and log books, and witness testimony. First Mot. to Appoint Counsel, ECF No. 5. The second motion requests an attorney to assist with serving Defendants and, more broadly, to provide him assistance with his lawsuit. *See* Second Mot. to Appoint Counsel, ECF No. 9.

As stated above, this is Plaintiff's third civil rights complaint that arises out of the same or similar set of facts. *See Tedtaotao v. Dep't of Corr.*, No. 1:21-cv-00016 (D. Guam May 25, 2021); *Pangelinan v. Dep't of Corrections*, No. 1:23-cv-00016 (D. Guam May 19, 2023). Plaintiff's first case was dismissed with leave to amend on September 28, 2022, and later dismissed on November 3, 2022, for failure to prosecute. *See Tedtaotao*, No. 1:21-cv-00016 (D. Guam Sept. 28, 2022); *Tedtaotao*, No. 1:21-cv-00016 (D. Guam Nov. 3, 2022). Similarly, Plaintiff's second case was dismissed with leave to amend on August 16, 2023, and later dismissed with prejudice on January 2, 2024, for failure to prosecute after Plaintiff was granted an extension to file an amended complaint. *See Pangelinan*, No. 1:23-cv-00016, 2023 WL 5276324 (D. Guam Aug. 16, 2023); *Pangelinan*, No. 1:23-cv-00016 (D. Guam Jan. 2, 2024).

---

[6] Plaintiff signed the declaration on September 13, 2024, and it was postmarked September 24, 2024. ECF No. 6.

[7] Plaintiff dated these filings August 4, 2024, and October 11, 2024, respectively. *See* ECF Nos. 5, 9.

## II. APPLICATION TO WAIVE FEES

Plaintiff has requested to proceed without prepaying fees or costs.[8] *See* Appl., ECF No. 2. Under 28 U.S.C. § 1915(a)(1), a court may authorize an individual to commence a civil action without prepaying the required filing fee, provided that the person "submits an affidavit [stating] . . . that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).

The court has reviewed Plaintiff's Application to Waive Fees and finds that he has sufficiently demonstrated his inability to pay the filing fee or give security therefor. Plaintiff is incarcerated at the Guam Department of Corrections. Plaintiff writes that "Guam Department of Corrections [doesn't] Provide Inmates opportunities to work for any kind of income." Appl. at 1, ECF No. 2. Consistent with that statement, Plaintiff left the income and asset sections of his short form application blank, which the court construes as indicating that he has no income or assets. *See id.* at 1-2; *cf. United States v. Qazi*, 975 F.3d 989, 992-93 (9th Cir. 2020) (discussing obligation to "construe pro se pleadings liberally," particularly filings from pro se inmates). Plaintiff further indicated that he owes $1,800 in restitution and court costs to the Supreme Court of Guam for his criminal case. Appl. at 2, ECF No. 2. Therefore, the court finds that Plaintiff cannot pay the filing fee and grants his Application to Waive Fees.

Accordingly, the court must screen Plaintiff's Complaint before allowing the case to proceed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000).

---

[8] Pursuant to 28 U.S.C. § 1914(a) and the Judicial Conference Schedule of Fees, a $405 filing fee is required from the party instituting any civil action in federal court.

**III. Screening the Complaint**

    **A. Jurisdiction**

        The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges deprivations of rights secured by the Constitution under 42 U.S.C. § 1983.

    **B. Standard of Review**

        Pursuant to 28 U.S.C. § 1915(e), the court is required to review a complaint and dismiss the case if the action is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Lopez*, 203 F.3d at 1126-27. A complaint must contain a short and plain statement that the plaintiff is entitled to relief, along with "enough facts to state a claim to relief that is plausible on its face." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006). The court must accept all allegations of material fact as true and construe those facts in the light most favorable to the plaintiff. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Although a plaintiff is not required to provide detailed allegations, legal conclusions are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is no claim for relief when the allegations "do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Additionally, in an action brought under Section 1983, a plaintiff must allege that each defendant personally participated in the deprivation of his rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

        When a plaintiff is *pro se*, the court must liberally construe the allegations in a complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation

omitted); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). Nonetheless, *pro se* litigants

"should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*,

790 F.2d 1362, 1364 (9th Cir. 1986); rather, they must follow the same rules of procedure that

govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). In particular, "a liberal

interpretation of a civil rights complaint may not supply essential elements of the claim that were

not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)

(internal quotation omitted).

### C. Allegations

#### 1. February 2018

The facts in Plaintiff's Complaint begin in February 2018 when he sustained an injury to

the knuckle of his right middle finger, which was a "major open cut that needed stitches."

Compl. at 13, ECF No. 1. Plaintiff was sent to the infirmary and attended to by Defendant Mark

Anderson. *Id.* Plaintiff alleges that Defendant Anderson only "washed out my hand with

medicated water and wrapped my hand with gause [sic]." *Id.* A week later, Plaintiff was

hospitalized for four days, where he learned that he had an infection in his right hand and needed

to have an operation to address it. *Id.* Plaintiff claims that "the lack of concern . . . from Dr. Mark

Anderson" caused him to sustain "long term damages and disfiguration" that amounts to a

violation of his "Eighth Amendment right to adequate medical care."[9] *Id.* In doing so, Defendant

Anderson "was acting under color of state law, acted under individual capacity." *Id.*

---

[9] Similar, but more minimal, allegations of these same facts were alleged in Plaintiff's two previous complaints that named Defendant Anderson. *See Tedtaotao v. Dep't of Corr.*, No. 1:21-cv-00016 (D. Guam May 25, 2021); *Pangelinan v. Dep't of Corrections*, No. 1:23-cv-00016 (D. Guam May 19, 2023).

### 2. March 2, 2022

Next, Plaintiff alleges that on March 2, 2022, he requested "alternate medical assistance by notifying the unit manager Frank Taianao and turning in a complaint to the Director's Office through former officer J.J. Meno." *Id.* In response, Plaintiff alleges that he was removed from his minimum housing unit and placed in a medical unit without proper medical authorization.[10] *Id.* at 14. Plaintiff was then tested for COVID-19 on March 3, 2022, and even after he tested negative, he was ordered by Defendant Borja (and informed by Defendant Taianao) to be housed with inmates who tested positive for COVID-19. *Id.* Plaintiff states that Defendants Borja and Taianao, acting in their individual capacities under color of state law, attempted to deprive him of life in violation of the Fifth Amendment and deprived him of his First Amendment right to be free from retaliation for submitting a grievance.[11] *Id.* at 13-14.

### 3. May 11, 2022

Plaintiff alleges that on May 11, 2022, a special operations team conducted a search in the prison and "a cell phone was found in another cell with two other inmates." *Id.* at 14. Plaintiff states that "[e]ven with no proof to show I used the cell phone let alone own it, Office[r] Gaberial Q Cruz falsified his statement claiming that I . . . owned the cell phone even though my cell was free of any type of contraband." *Id.* "He also instructed the inmates to [write] a statement stating the cell phone belonged to me." *Id.* As a result, Plaintiff alleges that he was placed in Post #06 in solitary confinement while the other two inmates remained in the minimum housing unit. *Id.* The alleged real reason for his solitary confinement was because Defendant Cruz knew of Plaintiff's prior grievance to the Director's Office and was participating in a bet to

---

[10] Plaintiff also states that "[Officer] Gaberial Q Cruz and Lt Frank Taianao" made a "money bet on removing [him] from minimum housing." Compl. at 14, ECF No. 1.

[11] Plaintiff alleged similar facts in *Pangelinan*, No. 1:23-cv-00016 (D. Guam May 19, 2023).

have him removed from minimum housing. *Id.* at 14-15. Plaintiff claims these actions by

Defendant Cruz, in addition to "deliberately providing false evidence that resulted in

administrative penalties," amount to violations of Plaintiff's First Amendment and Eighth

Amendment rights.[12] *Id.* at 15. Plaintiff states that these violations occurred when Defendant

Cruz was acting in his individual capacity under color of state law. *Id.*

### 4. October to November 2022 and December 2023

Next, Plaintiff alleges that in October 2022, Officer J.J. Santos approached his cell while

in solitary confinement and informed him that Defendant Taianao "instructed him to inform

[Plaintiff] that [he] is not allowed to send or receive mail to the court unless [he] remedy [a]

request to him first." *Id.* Plaintiff then describes a conversation between Santos and Taianao that

essentially amounts to one of the officers stating that he opened Plaintiff's legal mail and read his

court filings. *Id.* Then, in November 2022, Plaintiff states that he received notice that his prior

action in this court was dismissed for failure to provide an updated address, and he never

received notice of this because Defendant Taianao must have prevented him from receiving it.

*Id.* at 16. Thus, Plaintiff claims that Defendant Taianao violated his "right to unrestricted and

confidential access to the court," and was acting under color of state law when he did so. *Id.*

Plaintiff also claims that, in December 2023, Defendants Taianao and Cruz violated his

Fourteenth Amendment rights and Executive Order 94-19 for failing "to [recognize] an active

lawsuit" and for "remaining in minimum housing as officers in charge . . . which amounts to a

conflict of interest and against policy . . . during and [sic] active lawsuit." *Id.*

---

[12] Plaintiff alleged similar facts in *Pangelinan*, No. 1:23-cv-00016 (D. Guam May 19, 2023).

**5. December 2022**

Plaintiff further alleges that in the "mid part of December [2022]" he sent "privileged mail" to the court, including an amended complaint and request for a temporary restraining order to remove officers from his unit for harassment, through the unit officer. *Id.* at 16-17. Plaintiff claims that Defendant Cruz improperly opened and read his mail to this court and prevented it from being sent in violation of his rights, while "acting under color of state law in his individual capacity." *Id.* at 17.

**6. January 31, 2024**

Finally, Plaintiff alleges that, on January 31, 2024, "not long after a public announcement was made of the dismissal of my last case," Defendant Bobby D. Love instructed Plaintiff to "secure from work detail" and return to his unit. *Id.* at 17. There, Plaintiff was received by Defendant Cruz, who searched him. *Id.* Plaintiff then showered and laid on his bunk. *Id.* Defendant Cruz allegedly returned to Plaintiff's cell and requested Plaintiff's cellphone, despite him not having one. *Id.* at 18. Plaintiff attributed this to a conspiracy to have him removed from the minimum housing unit and began pleading with Defendant Cruz about how he did not do anything wrong. *Id.* Defendant Cruz then called a special response team to search Plaintiff's cell and, although no cellphone was found, the special response team returned "45 to an hour later" to remove him from the minimum housing unit as ordered on a call from Defendant Taianao to Defendant Borja. *Id.* Plaintiff was then transferred to solitary confinement. *Id.* Shortly thereafter, a disciplinary action was taken against Plaintiff, and he was sentenced to 190 days in solitary confinement. *Id.*

Plaintiff alleges that Defendant Love found the cellphone, and after a search of the phone, Defendant Cruz reported that Plaintiff's name and email address were found on the cellphone. *Id.*

at 18-19. However, Plaintiff states that Defendant Cruz wrote his alternative name, Joshua Pangelinan, which could only have been known by reading his intercepted court filings. *Id.* at 19. Plaintiff alleges that this is indicative of "a bigger motive" to retaliate against him for his lawsuit. *Id.* And even when he tried to request relief from the director's office, "Major Antone Agoun[,] who is the brother-in-law of Officer Bobby D. Love" turned down his requests. *Id.* Plaintiff does not tie these allegations to particular constitutional rights, but states that Defendants Taianao, Cruz, and Love violated his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights while acting under color of state law. *Id.*

### D. Analysis

#### 1. Res Judicata

The doctrine of res judicata, or claim preclusion, bars the re-litigation of "any claims that were raised or could have been raised" in a prior action. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citation omitted). The doctrine applies whenever (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits. *Id.* Ordinarily, a court may *sua sponte* raise the issue of res judicata at the screening stage to dismiss applicable claims. *E.g.*, *Love v. Macomber*, No. 2:23-cv-00790-DJC-EFB (PC), 2023 WL 3645515, at *1 (E.D. Cal. May 25, 2023), *adopted by* 2023 WL 5759294 (E.D. Cal. Sept. 6, 2023) (citing *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (Rehnquist, J. dissenting); *Clements v. Airport Auth. Of Washoe Cnty.*, 69 F.3d 321, 329-30 (9th Cir. 1995)). However, given the unique facts alleged in Plaintiff's Complaint and those stated in his subsequent declaration, the court declines to invoke res judicata at this stage to dismiss the previously alleged claims.

Plaintiff's Complaint articulates how several defendants have interfered and continue to interfere with his ability to receive mail from and send mail to the court, as well as his access to the court more broadly. *See* Compl. at 15-19, ECF No. 1. This is further supported by Plaintiff's supplemental declaration where he explained how he has been repeatedly prevented from filing court documents, including those to amend his prior complaints. *See* Decl. at 1-5, ECF No. 6. According to Plaintiff, this includes illegally intercepting his mail, placing him in solitary confinement, and administratively segregating him in the prison, among other actions aimed at preventing Plaintiff from using the mail to communicate with the court. *Id.* at 2-5. Taken as true, the court finds that it would be unfair to bar Plaintiff at the screening stage from realleging claims that were dismissed in prior cases for failure to prosecute when he could have been unable to amend due to third-party interference. Therefore, the court will proceed to screen the substance of Plaintiff's Complaint to determine whether the action is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

### 2. Section 1983 Claims

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff is ultimately required to prove: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. At this stage, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *See* FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 570.

As an initial matter, the court finds that Plaintiff has sufficiently alleged that the individual defendants acted under color of state law through personal participation in the alleged

1   deprivations. *See Jones*, 297 F.3d at 934; *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir.

2   2018) (discussing standard for supervisory liability under Section 1983). Therefore, the question

3   addressed herein is whether Plaintiff has sufficiently alleged that each defendant's conduct

4   deprived him of some right, privilege, or immunity protected by the Constitution or laws of the

5   United States.

6       Plaintiff alleges that he was deprived of rights guaranteed by six sources of law: (1) the

7   First Amendment, (2) the Fifth Amendment, (3) the Sixth Amendment, (4) the Eighth

8   Amendment, (5) the Fourteenth Amendment, and (6) Executive Order No. 94-19.

9   ### i. First Amendment Claims

10       Plaintiff alleges First Amendment violations on three occasions: (1) March 2, 2022;

11   (2) May 11, 2022; and (3) January 31, 2024. *See* Compl. at 13-15, 17-19, ECF No. 1. In general,

12   Plaintiff's claims allege that he was retaliated against for filing grievances in the prison system

13   and for filing civil rights lawsuits. Plaintiff also alleges claims for a violation of his right to

14   access the courts and, potentially claims for unreasonable interference with his mail, but he does

15   not identify the First Amendment as a source of rights.

16   ### a. Retaliation

17       Prisoners are guaranteed the "right to file prison grievances" and "pursue civil rights

18   litigation" under the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)

19   (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Schroeder v. McDonald*, 55 F.3d

20   454, 461 (9th Cir. 1995)). These protections provide mechanisms for inmates to remedy prison

21   injustices. *Id.* Thus, "purely retaliatory actions taken against a prisoner for having exercised

22   those rights necessarily undermine those protections." *Id.* Such claims are cognizable under 42

23   U.S.C. § 1983. *Id.*

24

To adequately allege a First Amendment retaliation claim, a plaintiff must allege facts sufficient to support the following: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68 (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)). A plaintiff is not required to allege that there was a "*total* chilling of his First Amendment rights"; rather, he need only allege facts sufficient to answer, "whether an official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568-69.

For the reasons discussed below, Plaintiff's First Amendment retaliation claims are dismissed for failure to plead the necessary elements, but the court grants him leave to amend the deficiencies explained below.

First, with respect to the March 2, 2022 allegations, Plaintiff claims that Defendants Borja and Taianao relocated Plaintiff from his minimum housing unit to a medical unit without proper medical authorization. Compl. at 13, ECF No. 1. This follows Plaintiff's request for alternative medical assistance and submission of a complaint to the director's office. *Id.* Plaintiff states that he was informed that he was placed on medical status because of his lawsuit and request for a medical alternative. *Id.* at 13-14. Despite these allegations, Plaintiff has not sufficiently alleged the elements articulated above. The court is willing to accept that his relocation could plausibly be an adverse action and that he engaged in protected First Amendment activities by filing a lawsuit or a complaint with the director's office. However, Plaintiff has not adequately alleged non-conclusory facts to support that Defendant Taianao and

Borja's actions were taken *because of* his protected conduct, that the actions chilled his exercise of First Amendment rights, or that the adverse actions did not reasonably advance a legitimate correctional goal.

Second, regarding the May 11, 2022 allegations, Plaintiff alleges that his cell was searched and no contraband was found. However, Plaintiff states that he was wrongly accused of owning a cellphone found in another cell and placed in solitary confinement. *Id.* at 14. Plaintiff claims that Defendant Cruz falsified a statement that Plaintiff owned the cell phone and instructed two inmates to write statements to that effect. *Id.* Plaintiff further claims that Defendant Cruz "was aware of the grievance" submitted to the director's office and organized his relocation to solitary confinement for "vengeance." *Id.* at 15. Plaintiff adds that Defendant Cruz participated in some kind of "money bet" to have him removed from minimum housing. *Id.* at 14-15. Assuming the material facts are true, Plaintiff adequately alleged that he was relocated to solitary confinement under the false accusation that a cellphone found in another cell was his because he previously filed a grievance with the director's office. Plaintiff has not, however, alleged that this adverse action chilled the exercise of his First Amendment rights or that the action did not reasonably advance a legitimate correctional goal. Nonetheless, the court acknowledges that relocation to solitary confinement would ordinarily chill or silence an inmate from future First Amendment activities. Therefore, Plaintiff need only amend his Complaint to address the final element that the Defendant Cruz's action did not advance a legitimate correctional goal.

Third, regarding the January 31, 2024 allegations, Plaintiff alleges that "not long after a public announcement was made of the dismiss[sal] of my last case CV 23-00016," Defendant Taianao directly ordered Defendants Cruz and Love to secure Plaintiff from his work detail and

1   search him. *Id.* at 17. After finding nothing, Defendant Cruz asked Plaintiff to turn over a

2   cellphone that Plaintiff claims he "was never in possession of." *Id.* at 18. After pleading with

3   Defendant Cruz to not take any action against him, Defendant Cruz told Plaintiff "we don't want

4   you out here" and had the special response team search him not long after. *Id.* Plaintiff then

5   states that Defendant Taianao contacted Defendant Borja who ordered that Plaintiff be placed in

6   solitary confinement. *Id.* Defendant alleges that a cell phone was later found in another location,

7   and he was subjected to disciplinary proceedings despite not owning the cell phone. *Id.* at 18-19.

8   Here, Plaintiff has not sufficiently articulated the adverse actions taken by each Defendant

9   against him *because of* his First Amendment protected activity. Plaintiff has also failed to

10   sufficiently allege how such action chilled the exercise of his First Amendment rights or how the

11   action did not reasonably advance a legitimate correctional goal. Again, the court recognizes that

12   Plaintiff did, in fact, file grievances in the prison and file lawsuits in this court, and that his

13   placement in solitary confinement could reasonably be seen as chilling protected activities.

14   However, Plaintiff has not adequately articulated which adverse actions, by which defendants,

15   were taken *because of* his First Amendment protected activity. Rather, Plaintiff makes general

16   allegations of a broader conspiracy to get back at him for filing grievances and lawsuits,

17   accompanied by actions that Plaintiff claims are in response to such protected activities.

18        In sum, Plaintiff's First Amendment retaliation claims suffer from several deficiencies in

19   pleading and should be dismissed with leave to amend in accordance with the instructions below.

20                **b.  Access to the Courts**

21        On three occasions, Plaintiff alleges that his right of access to the courts was violated:

22   (1) October to November 2022; (2) December 2022; and (3) January 31, 2024. *See* Compl. at 15-

23   19, ECF No. 1.

24

Under the First Amendment, a prisoner has a right of meaningful access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346, 356 (1996); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011), *overruled on other grounds as recognized by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); *see also, e.g.*, *Hopper v. Wright*, No. 1:10-cv-00055-GBC, 2012 WL 967634, at *4 (E.D. Cal. Mar. 12, 2012), *adoption recognized in* 2012 WL 1831876, at *7 (E.D. Cal. May 18, 2012). This right includes the right to bring a grievance that the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. To state a claim for relief, a plaintiff must have suffered an actual injury by being shut out of court. *Id.* at 351; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004). A plaintiff must plausibly allege: (1) acts by prison officials which frustrated his litigation activities; (2) the loss of a "nonfrivolous" or "arguable" claim, and (3) the remedy sought through the access to courts claim is not otherwise available in another suit. *See Christopher*, 536 U.S. at 415.

First, in October 2022, Plaintiff alleges that Defendant Taianao called Officer Santos and instructed him to inform Plaintiff while he was in solitary confinement that he is "not allowed to send or receive mail to the court unless [Plaintiff] remed[ies a] request to him first." Compl. at 15, ECF No. 1. Plaintiff further alleges that Defendant Taianao "mention[ed] that he opened [Plaintiff's] legal mail to the court and read the [contents]," which related to his amended complaint. *Id.* Then, in November 2022, Plaintiff received notice that the court dismissed his case. *Id.* Plaintiff therefore concludes that Defendant Taianao violated his right to access the court. *Id.* at 16. Taken as true, Plaintiff has adequately alleged that Defendant Taianao deprived

him of his right to access the court. Plaintiff's prior case was dismissed with leave to amend, and later dismissed for failure to prosecute. Defendant Taianao's actions would have clearly frustrated Plaintiff's ability to amend his complaint in such a way that caused his case to be dismissed. Although Plaintiff could have sought to raise this issue in a prior case, his case was closed, and he opted to file this case instead. In other words, Plaintiff would not have been able to request this remedy in another action. Therefore, Plaintiff's October 2022 First Amendment claim that alleges Defendant Taianao violated his right to access the courts may proceed past screening.

Second, in December 2022, Plaintiff claims that he turned in mail to the unit officer to be sent to the court. Compl. at 16, ECF No. 1. This mail contained an amended complaint for a previous case and a request for a restraining order. *Id.* at 16-17. The mail also listed both of Plaintiff's names—Joshua J.P. Tedtaotao and Joshua John Pangelinan—but the Department of Corrections would allegedly only know the first. *Id.* at 17. Plaintiff concludes that Defendant Cruz violated his right to access the court because Cruz knew his alternate name which Cruz only could have discovered by opening and reading Plaintiff's mail. *Id.* at 17. Here, Plaintiff has not sufficiently alleged a claim for violation of his access to the courts. Although Plaintiff has indicated that Defendant Cruz opened and read his mail and the court can infer that this remedy is not otherwise available in another suit, Plaintiff has not alleged that Defendant Cruz's acts frustrated his litigation activities or that they caused the loss of a "nonfrivolous" or "arguable" claim. Accordingly, Plaintiff's allegations of a claim for a deprivation of his right to access the court in December 2022 against Defendant Cruz is dismissed with leave to amend.

Finally, Plaintiff alleges that on January 31, 2024, after a public announcement of the dismissal of his second case in this court, there was an incident where he was framed as the

owner of a cell phone seized in another cell. *See* Compl. at 18-19, ECF No. 1. Plaintiff alleges

that when Defendant Love turned in the cell phone, he wrote "Joshua Pangelinan," which he

would only know if he read the Plaintiff's mail from this court. *Id.* at 19. Plaintiff then concludes

that this constitutes both a "bigger motive" to retaliate against him for his lawsuit and to stifle his

ability to file internal complaints. *Id.* As before, even though Plaintiff has indicated that

Defendant Love must have read his mail from the court because he wrote Plaintiff's alternate

name down and the court can infer that this remedy would not otherwise be available in another

suit, Plaintiff has not sufficiently alleged that Defendant Love's acts frustrated his litigation

activities or that they caused the loss of a "nonfrivolous" or "arguable" claim with sufficient

particularity. While the claim need not be alleged in great detail, Plaintiff must allege more than

speculations and legal conclusions. Accordingly, Plaintiff's claim for a deprivation of his right to

access the court against Defendant Love on January 31, 2024, is dismissed with leave to amend.

In short, Plaintiff need not amend his allegations against Defendant Taianao from

October to November 2022, but the other two claims against Defendants Cruz and Love from

December 2022 and January 31, 2024, respectively, are dismissed with leave to amend in

accordance with the instructions provided below.

### c.   Unreasonable Interference with Mail

The court further reads Plaintiff's claims for a violation of his right to access the court as

being intertwined with claim for unreasonable interference with his mail to and from this court

on at least three occasions: (1) October to November 2022 and December 2023; (2) December

2022; and (3) January 31, 2024.

Under the First Amendment, a prisoner has the right to send and receive mail. *See*

*Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Prisoners are also entitled to be free from

1  unreasonable interference with their mail. *See Procunier v. Martinez*, 416 U.S. 396, 408-09

2  (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also, e.g.*,

3  *Greening v. Klemme*, 34 F. Supp. 3d 1144, 1154 (E.D. Wash. 2014) (explaining that the right

4  derives from the First and Fourteenth Amendments). Nonetheless, a prison may regulate in ways

5  that limit this right so long as the interference is "reasonably related to legitimate penological

6  interests." *United States v. Wilson*, 447 F.2d 1, 8 n.4 (9th Cir. 1971); *see also Greening*, 34 F.

7  Supp. 3d at 1154 (quoting *Thornburgh*, 490 U.S. at 404). "Mail from the courts, as contrasted to

8  mail from a prisoner's lawyer, is not legal mail," and, therefore, the First Amendment does not

9  prohibit opening such mail outside the recipient's presence. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d

10  1204, 1211 (9th Cir. 2017).

11          Here, Plaintiff has not alleged that a prison regulation or policy has interfered with his

12  First Amendment right to send and receive mail. Rather, Plaintiff has alleged that certain

13  defendants opened his mail from the court outside his presence and interfered with his right to

14  send and receive mail from the court. Although the First Amendment does not prohibit prison

15  officials from opening Plaintiff's mail to and from the court for legitimate penological purposes,

16  it does protect interferences with Plaintiff's ability to send and receive mail for illegitimate

17  purposes. *See Hayes*, 849 F.3d at 1211-12; *Greening*, 34 F. Supp. 3d at 1154. Thus, Plaintiff has

18  sufficiently plead that Defendant Taianao has improperly interfered with his right to send and

19  receive mail in October to November 2022 because, taken as true, Defendant Taianao instructed

20  other officer that Plaintiff was "not allowed to send or receive mail to the court unless [he]

21  remedy [a] request to him first" and further indicated that he opened and read Plaintiff's mail

22  associated with a prior case that was returned to the court as undeliverable. Compl. at 15-16,

23  ECF No. 1. However, Plaintiff has not sufficiently alleged that Defendants Cruz and Love

24

improperly interfered with his ability to send and receive mail to the court in December 2022 and

January 31, 2024, respectively. Plaintiff will be granted leave to amend the allegations against

Defendants Cruz and Love in accordance with the instructions below, and his claim against

Defendant Taianao will proceed past screening.

### ii. Fifth Amendment Claim

Plaintiff alleges a Fifth Amendment violation on one occasion: March 2, 2022. *See*

Compl. at 13-14, ECF No. 1. Plaintiff claims that Defendants Borja and Taianao attempted to

"deprive [him] of life" when they removed him from "medical unit post #04" and placed him "at

Zone 9 which at the time housed active COVID-19 inmates/detainees" despite Plaintiff testing

negative when initially placed in the medical unit. *Id.*

The Fifth Amendment states that no person shall be "deprived of life, liberty, or property,

without due process of law." U.S. Const. amend. V. The Fifth Amendment's due process clause

only applies to the federal government, not state or local officials. *E.g.*, *Bingue v. Prunchak*, 512

F.3d 1169, 1174 (9th Cir. 2008); *Castillo v. McFaddan*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005).

Plaintiff is incarcerated in the Guam Department of Corrections for a local offense convicted in

the Superior Court of Guam. There are no federal officials alleged in his Complaint. Therefore,

Plaintiff may not proceed against the named Defendants under the Fifth Amendment.

Accordingly, Plaintiff's Fifth Amendment claim is dismissed without leave to amend

because any amendment would be futile.

### iii. Sixth Amendment Claim

Plaintiff alleges a Sixth Amendment violation on one occasion: January 31, 2024. *See*

Compl. at 13-14, ECF No. 1. Plaintiff does not, however, allege facts to support a Sixth

Amendment violation. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. Plaintiff identifies the Sixth Amendment at the conclusion of his January 31, 2024 allegations but does not explain, in any discernable way, which Sixth Amendment right was violated or which facts support such violation. Accordingly, the court dismisses Plaintiff's Sixth Amendment claim but will grant him leave to amend to identify the particular rights that he believes were violated in accordance with the instructions below.

### iv.  Eighth Amendment Claim

Plaintiff alleges that his Eighth Amendment rights were violated on three occasions: (1) February 2018; (2) May 11, 2022; and (3) January 31, 2024. Compl. at 13, 14-15, 17-19, ECF No. 1. Plaintiff's Eighth Amendment allegations arise out of the medical treatment he received for his injured hand and the provision of false evidence that resulted in administrative penalties. *See id.*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition of cruel and unusual punishment includes the right to adequate medical care while incarcerated. *Lopez*, 203 F.3d at 1131-32. It does not, however, prohibit the provision of false evidence that results in administrative penalties. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)

#### a.  Inadequate Medical Care

To assert an Eighth Amendment claim for inadequate medical care, a plaintiff must show that each defendant, i.e., the prison doctor or medical staff member, was "deliberately indifferent

to his serious medical needs." *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125

L.Ed.2d 22 (1993); *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251

(1976); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam). The

claim contains both objective and subjective elements. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th

Cir. 2002). First, a plaintiff must allege that his medical need was serious, such that a failure to

treat the condition could result in further significant injury or the unnecessary and wanton

infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, a plaintiff must

allege that defendant's response to the need was "deliberately indifferent," such that there was a

purposeful act or failure to respond to the medical need and harm was caused. *Id.* A defendant

can be "deliberately indifferent" when they deny, delay, or intentionally interfere with medical

treatment, or where the defendant provided inadequate medical care. *Id.* However, a "difference

of medical opinion as to the need to pursue one course of treatment over another [is] insufficient,

as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332

(9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir.

2014).

Here, Plaintiff alleges that in February 2018, he received medical care from Defendant

Anderson for a "major open cut" to his "right hand middle finger." Compl. at 13, ECF No. 1.

Plaintiff states that Defendant Anderson "only washed out [his] hand with medicated water and

wrapped [his] hand with gause [sic]." *Id.* Plaintiff then claims that the medical care was

inadequate because, a week later, he needed an operation for a major infection. *Id.* Plaintiff was

also hospitalized for four days and sustained long-term damages and disfiguration to his finger.

*Id.* Taking the allegations as true, Plaintiff has adequately alleged that he had a serious medical

need. Although he did not articulate why his medical need was serious, it is well within reason to

assume that a "major open cut" required medical attention to prevent an infection and further injury. Plaintiff has also adequately alleged that Defendant Anderson did not provide adequate treatment. *Id.* Plaintiff claims that his "major open cut" needed stitches and medication, but Defendant Anderson only washed his wound with medicated water and wrapped his hand in gauze. *Id.* Thereafter, Plaintiff's hand became infected, he was hospitalized and needed an operation that resulted in permanent disfigurement to his right hand. *Id.* Thus, the court finds that Plaintiff's Eighth Amendment claim against Defendant Anderson in February 2018 has been adequately alleged and may proceed past screening.

### b. Providing False Evidence

Plaintiff has not, however, adequately articulated the basis for an Eighth Amendment violation for the incidents described on May 11, 2022, and January 31, 2024. It appears that Plaintiff's claims concern certain defendants providing false evidence that resulted in administrative penalties, namely his placement in solitary confinement. In support, Plaintiff cites to cases that address similar claims, but such claims are addressed under a Fourteenth Amendment claim for deliberate fabrication of evidence by a state official. *E.g.*, *Harris v. Borquez*, No. 1:23-cv-00046-BAM (PC), 1:23 2023 WL 2392747, at *3-4 (E.D. Cal. Mar. 7, 2023); *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). Because the claims are properly addressed under the Fourteenth Amendment, the court will dismiss the remaining Eighth Amendment claims for failure to state a claim unless Plaintiff amends his Complaint to address this error. The deliberate fabrication of evidence claim will be addressed below. If Plaintiff meant to allege a different claim for relief under the Eighth Amendment, then he shall indicate as such in an amended complaint.

### v. Fourteenth Amendment Claims

Plaintiff alleges violations of his rights under the Fourteenth Amendment on two occasions: (1) October to November 2022 and December 2023, and (2) January 31, 2024. *See* Compl. at 14-16, 18-19, ECF No. 1. On the first occasion, Plaintiff alleges that his "right to unrestricted and confidential access to the court" was violated by Defendants Taianao and Cruz. *Id.* at 15-16. On the second occasion, Plaintiff alleges a violation of the Fourteenth Amendment but does not state what conduct in particular violated the Fourteenth Amendment. *Id.* at 18-19. Plaintiff also alleges facts to support a Fourteenth Amendment claim for deliberate fabrication of evidence on May 11, 2022, but does not identify the Fourteenth Amendment as a source of rights. *Id.* at 14-15. The court first addresses Plaintiff's "access to courts" claim, and then addresses the deliberate fabrication of evidence claims.

### a. Access to the Courts

As explained above, *see supra* Section III(D)(2)(i)(b), Plaintiff alleges that Defendants Taianao and Cruz violated his "right to unrestricted and confidential access to the court" from October to November 2022 and in December 2023. Compl. at 15-16, ECF No. 1. Although Plaintiff articulates this as a violation of his rights under the Fourteenth Amendment, it is more appropriately analyzed as a First Amendment claim for a violation of the right to access the courts, made applicable to Guam under the Fourteenth Amendment. Therefore, because the claim was already addressed above, the court will not address it further.

### b. Deliberate Fabrication of Evidence

As explained above, *see supra* Section III(D)(iv)(b), Plaintiff appears to allege claims for deliberate fabrication of evidence under the Eighth Amendment, which are more properly

analyzed as Fourteenth Amendment claims, on May 11, 2022, and January 31, 2024. *See* Compl. at 14-15, 18-19, ECF No. 1.

The Due Process Clause of the Fourteenth Amendment prohibits the deliberate fabrication of evidence in criminal charges or certain administrative penalties by a state official. *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (citing *Devereaux*, 263 F.3d at 1074-75). A deliberate fabrication claim ultimately requires a plaintiff to prove that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.* at 798 (citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). To show the second element, a plaintiff must show "that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id.* (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 582-83 (7th Cir. 2012)).

Plaintiff first alleges a deliberate fabrication of evidence claim on May 11, 2022, against Defendant Cruz. *See* Compl. at 14-15, ECF No. 1. Plaintiff states that he was subjected to a search where the special operations team found a cell phone in a prison cell that was not his. *Id.* According to Plaintiff, Defendant Cruz falsified a statement that Plaintiff owned the cell phone and instructed other inmates to write a statement that the cell phone was Plaintiff's. *Id.* at 14. As a result, Plaintiff was placed in solitary confinement. *Id.* Taken as true, Plaintiff has adequately alleged a claim for deliberate fabrication of evidence. *See Spencer*, 857 F.3d at 798. As alleged, the false report by Defendant Cruz and false statements compelled by Defendant Cruz in support of the report resulted in Plaintiff being placed in solitary confinement, which would not have

happened absent the report. Accordingly, Plaintiff's Fourteenth Amendment claim for deliberate fabrication of evidence against Defendant Cruz on May 11, 2022, may proceed past screening.

Liberally construing the Complaint, Plaintiff may also be attempting to allege other deliberate fabrication of evidence claims on January 31, 2024, against Defendants Cruz, Love, Borja, and Taianao when he was placed in solitary confinement after a cell phone was found with his name on it. *See* Compl. at 18-19, ECF No. 1. However, Plaintiff does not clearly state whether any of these defendants deliberately fabricated evidence, or whether such evidence resulted in his placement in solitary confinement. *See Spencer*, 857 F.3d at 798. Accordingly, Plaintiff's deliberate fabrication of evidence claim on January 31, 2024, if any, may not proceed past screening unless he is able to amend his allegations in accordance with the instructions provided below.

### vi. Claim under Executive Order No. 94-19

Finally, Plaintiff claims that his rights under Executive Order No. 94-19 were violated in December 2023 by Defendants Taianao and Cruz for failing "to [recognize] an active lawsuit" and for "remaining in minimum housing as officers in charge . . . which amounts to a conflict of interest and against policy . . . during and active lawsuit." Compl. at 16, ECF No. 1. Plaintiff goes on to explain that it was "against policy" and a "conflict of interest" because Defendants Taianao and Cruz remaining in charge of the minimum housing unit interfered with his "rehabilitation and profession" during an active lawsuit "in a negative way." *Id.* From what the court can discern, Plaintiff appears to be citing to an executive order signed on December 30, 1994, by the then-Governor of Guam Joseph F. Ada, which imposes rules and regulations for the Guam Department of Corrections. *See* Guam Exec. Order No. 94-19 (1994).[13] In essence, it

---

[13] A PDF of the executive order can be found here: https://doc.guam.gov/wp-doc-content/uploads/2016/11/Executive-Order-94-19-Rules-and-Regulations-of-The-Department-of-Corrections.pdf.

1   appears that Plaintiff is alleging that Defendants Taianao and Cruz violated this executive order

2   by continuing to supervise his minimum housing unit while he had an active lawsuit pending.

3   Compl. at 16, ECF No. 1.

4        Section 1983 provides a cause of action for a plaintiff to state a deprivation of rights

5   secured by the Constitution and laws of the United States. Section 1983 *does not* provide a cause

6   of action for a right not secured by federal law. *See Anderson v. Ghaly*, 930 F.3d 1066, 1073 (9th

7   Cir. 2019) (outlining test for determining whether "a particular statutory provision gives rise to a

8   federal right"). For this reason, Plaintiff's allegations regarding Defendants Taianao's and Cruz's

9   violations of the Guam executive order are not actionable under 42 U.S.C. § 1983. Therefore,

10  this claim is dismissed with prejudice.

11       In sum, Plaintiff's Complaint is dismissed in part with leave to amend the deficiencies

12  described herein and in accordance with the instructions below. Although Plaintiff is being

13  granted leave to amend on certain claims, Plaintiff's Fifth Amendment claim for deprivation of

14  life and claim under Executive Order No. 94-19 are dismissed without leave to amend and with

15  prejudice.

16  **IV. Leave to Amend and Status Hearing**

17       The court finds that dismissal with leave to amend is warranted. It is not clear, based on

18  the present facts, whether the claims indicated above would be futile or whether they could be

19  "cured by the allegations of other facts." *Lopez*, 203 F.3d at 1128; *see also Akhtar v. Mesa*,

20  698F.3d 1202, 1212 (9th Cir. 2012); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th

21  Cir. 2000). Thus, leave to amend should be "freely given when justice so requires." *See* FED. R.

22  CIV. P. 15(a)(2); *see also Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014).

23

24

Because the court is only dismissing certain claims without prejudice (i.e., Plaintiff's First Amendment retaliation claims, First Amendment access to courts claims against Defendants Cruz and Love, First Amendment unreasonable interference with mail claims against Defendants Cruz and Love, Sixth Amendment claims, and Fourteenth Amendment deliberate fabrication of evidence claim from January 31, 2024), Plaintiff must file an amended complaint within forty-five (45) days of this Decision and Order.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The amended complaint must be rewritten and function as an independent document. It may not incorporate the prior complaint or other documents by reference. Failure to amend before the deadline or to sufficiently allege claims will result in automatic dismissal of the outstanding claims with prejudice. Causes of action not raised in the amended complaint will be waived.

The following instructions are provided to summarize the elements needed to state each claim, as analyzed in Section III(D). Plaintiff should still refer to each section therein for further information about the applicable law and the specific deficiencies of each claim, as noted by the court. If Plaintiff wishes to file an amended complaint, he must demonstrate the following:

1. First Amendment Claims:

 a. Retaliation: Plaintiff shall amend his allegations on March 2, 2022, May 11, 2022, and January 31, 2024, to allege the following elements against each defendant who are claimed to have retaliated against him: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *See supra* Section III(D)(2)(i)(a).

    b. <u>Access to the Courts</u>: Plaintiff shall amend his allegations from December 2022 against Defendant Cruz and January 31, 2024, against Defendant Love to allege the following: (1) acts by prison officials which frustrated his litigation activities; (2) the loss of a "nonfrivolous" or "arguable" claim, and (3) the remedy sought through the access to courts claim is not otherwise available in another suit. *See supra* Section III(D)(2)(i)(b).

    c. <u>Unreasonable Interference with Mail</u>: Plaintiff shall amend his allegations from December 2022 against Defendant Cruz and January 31, 2024, against Defendant Love to allege how each defendant unreasonably interfered with his mail and how such interference was not made for a legitimate penological purpose. *See supra* Section III(D)(2)(i)(c).

2. <u>Sixth Amendment Claim(s)</u>: Plaintiff shall specifically allege which right(s) protected by the Sixth Amendment that he believes was deprived. Once identified, Plaintiff must state facts sufficient to support claims against each defendant who allegedly violated such rights. *See supra* Section III(D)(2)(iii).

3. <u>Fourteenth Amendment Claims for Deliberate Fabrication of Evidence</u>: Plaintiff shall amend his allegations on January 31, 2024, to allege the following against each Defendants Cruz, Love, Borja, and Taianao: "(1) [that] the defendant official deliberately fabricated evidence and (2) [that]the deliberate fabrication caused the plaintiff's deprivation of liberty." *See supra* Section III(D)(2)(v)(b).

4. More broadly, Plaintiff must allege who the defendant or defendants are with specificity and identify which defendants relate to which claims. Plaintiff must also allege that the individual defendants acted under color of state law through personal participation in the alleged deprivations. There must be an affirmative link or connection between a defendant's actions and the claimed deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976); *see also supra* Section III(D)(2).

## V. Motions to Appoint Counsel

In Plaintiff's motions to appoint counsel, he requests help from an attorney to "serv[e] the defendants . . . with 'summons'" and to "retrieve evidence" from the Department of Corrections related to his claims. ECF Nos. 5, 9. Plaintiff further states that "an appointed lawyer . . . will be of help to sustain the constant harassment [he is] receiving." ECF No. 9.

As this court explained in one of Plaintiff's prior cases, he is not entitled to counsel under the statute or under the Constitution. *See Pangelinan*, 2023 WL 5276324, at *8 (citing 18 U.S.C. §§ 3006A(a)(1)-(2), (j); *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985)). However, in extraordinary circumstances, "[t]he court *may* request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis added); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990). Such exceptional circumstances require that the court consider a plaintiff's "likelihood of success on the merits and an evaluation of the plaintiff's ability to articulate his claims in light of the complexity of the legal issues involved." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *see also Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (holding that district court did not abuse discretion in declining to appoint counsel and indicating that these exceptional circumstances must be "viewed together"). A "likelihood" does not mean that

1  success is certain or even probable; rather, a "likelihood" means that there is "possible merit" to

2  the claims. *See Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 925 (2017). A plaintiff

3  bears the burden of demonstrating the existence of such exceptional circumstances to warrant

4  appointment of an attorney. *Palmer*, 560 F.3d at 970.

5  As an initial matter, Plaintiff has not sufficiently articulated his likelihood of success on

6  the merits or an inability to articulate his claims in light of the complexity of the issues involved

7  in his motions to appoint counsel. That said, Plaintiff's claims certainly involved complex legal

8  issues, several of which the court has allowed to proceed past screening. For example, Plaintiff's

9  surviving First and Eighth Amendment claims involve legal issues that are likely unfamiliar to

10 Plaintiff and that he would likely struggle to articulate in court or in substantive briefings.

11 Relatedly, the potential discovery requests and responses involved in prosecuting this case would

12 likely prevent significant challenges for Plaintiff given that the nature of his allegations and his

13 incarceration. And taking Plaintiff's First and Fourteenth Amendment allegations of retaliation,

14 interference with access to the courts, and unreasonable interference with mail as true, it is likely

15 that Plaintiff would experience significant difficulty in prosecuting his case. Plaintiff has further

16 indicated that he has experienced "hardship, mistreatment, and inhuman [sic] problems" from

17 prison officials as a result of his lawsuit. *E.g.*, ECF No. 9.

18 Nonetheless, the court does not find that Plaintiff's ability to articulate his grievances in

19 light of the complexity of his claims is inhibited at this time. In fact, Plaintiff has filed a fairly

20 detailed complaint and supplemental documentation that articulates his grievances in this court

21 and in his prior administrative proceedings. While this does not make up for the legal complexity

22 of Plaintiff's claims or any deficiencies in pleading, the court declines to appoint Plaintiff

23 counsel at this time because Plaintiff has not sufficiently met his burden of alleging exceptional

24

circumstances outside of his complaint. *See Pangelinan*, 2023 WL 5276324, at *8. The court will

dismiss his motions to appoint counsel *without* prejudice. Plaintiff may renew his motion upon

amending his complaint and, if so, he must demonstrate the existence of exceptional

circumstances as described above.

## VI. Conclusion

For the foregoing reasons, Plaintiff's Complaint is **DISMISSED IN PART**. Plaintiff's

First Amendment claims against Defendant Taianao for interference with Plaintiff's access to the

courts and unreasonable interference with mail (both in October to November 2022), Eighth

Amendment claim against Defendant Anderson in February 2018, and Fourteenth Amendment

against for deliberate fabrication of evidence claim against Defendant Cruz on May 11, 2022, are

allowed to proceed past screening. Plaintiff's Fifth Amendment claims and claim under

Executive Order No. 94-19 are dismissed with prejudice. Plaintiff's remaining claims, as

identified previously, are dismissed with leave to amend. Finally, Plaintiff's motions to appoint

counsel are **DENIED** without prejudice. ECF Nos. 5, 9.

Plaintiff has forty-five (45) days from the filing of this order to file an amended

complaint in compliance with the Federal Rules of Civil Procedure and the instructions provided

above. Failure to file the amended complaint by the deadline may result in automatic dismissal,

with prejudice, of the pending claims without further notice from the court.

At this time, Plaintiff's Complaint will not be served on the Defendants because the court

is granting him an opportunity to amend his complaint. Upon receipt of Plaintiff's amended

complaint, the court will screen the amendments to determine if such claims shall proceed.

**SO ORDERED.**

/s/ Frances M. Tydingco-Gatewood
**Chief Judge**
**Dated: Apr 10, 2025**